UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA OSHANA SEPARATE PROPERTY TRUST, dated September 16, 2015,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BAYVIEW LOAN SERVICING, LLC; SELECT PORTFOLIO SERVICING, INC.; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 17cv2408-WQH-RBB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the motions to dismiss filed by Defendant Select Portfolio Servicing, Inc., (ECF No. 28), Defendant Bayview Loan Servicing, LLC, (ECF No. 30), and Defendant Bank of America, N.A., (ECF No. 31).

**I.    PROCEDURAL BACKGROUND**

On November 30, 2017, Plaintiff Nina Oshana Separate Property Trust initiated this action by filing a complaint with Jury Demand against Defendants Bank of America, N.A. (Bank of America), Bayview Loan Servicing LLC (Bayview), Select Portfolio Servicing, Inc. (Select Portfolio), and doe defendants. (ECF No. 4).

On December 18, 2017, Plaintiff filed an amended complaint. (ECF No. 3). On July 9, 2018, Plaintiff filed a second amended complaint, the operative Complaint in this matter. (ECF No. 26). Plaintiff alleges the following causes of action: (1) breach of written contract, (2) negligence, (3) negligent misrepresentation, (4) accounting, (5) violations of Regulation X of California's Rosenthal Fair Debt Collection Practices Act (RFDCPA) and Regulation Z of the federal Truth In Lending Act (TILA), (6) declaratory relief, and (7) violation of the federal Real Estate Settlement Procedures Act (RESPA).

On July 19, 2018, Select Portfolio filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 28), accompanied by a request for judicial notice (ECF No. 29). On July 23, 2018, Bayview filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 30), accompanied by a request for judicial notice (ECF No. 30-2).[1] On July 23, 2018, Bank of America filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 31), accompanied by a request for judicial notice (ECF No. 31-2).[2] Defendants contend that Plaintiff lacks standing to bring the claims and fails to allege sufficient facts to state the claims under the applicable pleading standards.

On August 9, 2018, Plaintiff filed a Response to the motions to dismiss. (ECF No. 32). Plaintiff contends that the Complaint adequately alleges facts to state plausible claims of relief as to all causes of action.

On August 17, 2018, Bank of America filed a Reply. (ECF No. 33). On August 23, 2018, Select Portfolio filed a Reply. (ECF No. 34). On August 24, 2018, Bayview filed a Reply. (ECF No. 35).

---

[1] The caption on Bayview's Motion seeks dismissal pursuant to "Fed. R. Civ. P. 12(b)(6)(7)." (ECF No. 30 at 1). To the extent Bayview seeks dismissal on grounds other than Fed. R. Civ. P. 12(b)(6), such grounds are unsupported by Bayview's Motion.

[2] Judicial notice of the requested documents is unnecessary for this Order. Defendants' requests for judicial notice are denied. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

## II. ALLEGATIONS OF THE COMPLAINT

This action arises out of "a construction loan in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00)," or "the COUNTRY WIDE DOT," recorded against real property located at 4209 Desoto Court, La Mesa, California. (ECF No. 26 ¶¶ 18, 21). Plaintiff alleges that "[s]hortly thereafter, BANK OF AMERICA represented that it had acquired the COUNTRY WIDE DOT and was the servicer of PLAINTIFF'[s] Loan." *Id.* ¶ 22. Plaintiff alleges,

> Beginning on or about March 2011, and throughout calendar years 2015 and 2016, PLAINTIFF is informed, and believe[s], and thereon allege[s], that the[] mortgage payments, at all times relevant herein, were timely made and they are presently current on their mortgage without a single breach or violation of the loan agreement.

*Id.* ¶ 25.[3] Plaintiff alleges that "Defendants implemented [a] fraudulent income strategy when PLAINTIFF defaulted on his loan." *Id.* ¶ 26.

Defendants' alleged strategy is to "order default-related services from their subsidiaries and affiliated companies, who, in turn, obtain the services from third-party vendors" who "charge Defendants for the services." *Id.* ¶ 27. Plaintiff alleges that "Defendants mark-up the fees significantly, charge the new, marked-up amount on the borrower's account and retain the fraudulently generated profit." *Id.* Plaintiff alleges that "Defendants continue fraudulently generating substantial profits by concealing unnecessary, undisclosed and unlawful marked-up fees to borrowers' accounts under the guise of lawfully charged default-related fees." *Id.*

Plaintiff alleges that the loan documents permit loan servicers to pay fees necessary to protect the beneficiary's interest in the loan, including default-related services. *Id.* ¶ 29. Plaintiff alleges that the loan documents allow the loan servicer "to be reimbursed by the borrowers, but . . . do[] not authorize the servicer to mark-up the actual cost of those

---

[3] The Complaint excerpts in this Order reflect the original grammar unless otherwise noted.

services to make a profit." *Id.* Plaintiffs allege that "Defendants conceal these marked-up fees," and charge borrowers for "unnecessary and unreasonable" property inspections. *Id.* ¶¶ 31–34.

Plaintiff alleges that "[w]hen borrowers, like PLAINTIFF, get behind on their mortgages and fees for these default-related services are added on to the past-due principal and interest payments, Defendants' practices make it increasingly difficult for borrowers to bring their loan current." *Id.* ¶ 36. Plaintiff alleges that "Defendants provide information about borrowers' payment history to credit reporting companies," which "causes severe damage to their credit scores." *Id.* ¶ 37. Plaintiff alleges that "Defendants' practices" "keep[] borrowers in default" and cause "borrowers, including PLAINTIFF" to be "wrongfully driven into foreclosure." *Id.* ¶¶ 37–38. Plaintiff alleges that Defendants caused incorrect entries on Plaintiff's credit report history regarding monthly mortgage payments for May 2015 through August 2015, November 2015 through October 2016, and February 2017 through September of 2017. *Id.* ¶¶ 39–41.

Plaintiff alleges that Plaintiff "contacted Defendants . . . to seek the immediate correction of her credit reports" and "an accounting of all her mortgage payments for[] more than three years with no avail." *Id.* ¶¶ 42–43. Plaintiff alleges,

> At some point, the PLAINTIFF reached the point of utter frustration. This is documented in a diary that PLAINTIFF maintained. Without being able to obtain answers and information from Defendants BANK OF AMERICA, SELECT, BAYVIEW, and DOES 1 – 20, inclusive, the PLAINTIFF sought legal services. PLAINTIFF's former Counsel was one such lawyer who contacted and submitted various letters to the servicer (Select Portfolio Services) for information in the form of a Qualified Written Request [permitted under Section 6 of the Real Estate Settlement Procedures Act ("RESPA")] notice of dispute and demand on or about March 14, 2017. These submittals requested the same kind of information requested by the PLAINTIFF pro se, but were more formal. Defendants BANK OF AMERICA, SELECT, BAYVIEW, and DOES 1 – 20, inclusive, did not properly respond to these requests.

*Id.* ¶ 44. Plaintiff alleges that Plaintiff "sent letters" to Defendants "under RESPA, demanding that they halt their adverse credit reporting relating to the issues presented in the letter until matters were clarified." *Id.* ¶ 47. Plaintiff alleges that Defendants "would not cease their wrongful activities, and Plaintiffs' credit has been significantly tarnished by this, which is an inappropriate and wrongful action." *Id.* ¶ 48. Plaintiff alleges that Bank of America previously serviced the loan, and that Bayview acquired the servicing and continues to service the loan. *Id.* ¶¶ 48–49, 52.

Plaintiff alleges that Defendants breached the loan agreement; breached duties of reasonable care for loan record maintenance and disclosure, and employee supervision and training; and made false representation to Plaintiffs and third parties, causing reasonable reliance. *Id.* ¶¶ 56, 59–62, 64–69. Plaintiff alleges that Defendants "wrongfully demanded and received inaccurate and excessive payments" and "refused to listen to reason and correct their inaccurate and deficient records." *Id.* ¶ 73. Plaintiff alleges that Defendants knowingly and falsely "represented that PLAINTIFF was behind on their mortgage by more than of $25,824.68, yet, DEFENDANTS never foreclosed on the Subject Property." *Id.* ¶ 78.

Plaintiff alleges that "after PLAINTIFF's debt under the COUNTRYWIDE DOT was negligently and inaccurately accounted[], by the foreclosure on the Subject Property," Defendants "deducted several monthly payments between January 1, 2015 and the present date, totaling more than $70,000.00 from PLAINTIFF's bank account, for payments that had not yet become due, that were far in excess of the Mortgage Payment due under the COUNTRYWIDE DOT, and which are yet to be properly accounted for on Plaintiff's mortgage statements," or refunded to Plaintiff. *Id.* ¶ 79. Plaintiff alleges that "Defendants' unfair, unlawful, and fraudulent business practices and false and misleading advertising" do not comply with Cal. Bus. & Prof. Code §17200 and "present a continuing threat to members of public in that other consumers will be defrauded into having their property improperly sold at foreclosure." *Id.* ¶ 82.

Plaintiff alleges that "Defendants refused to take appropriate action in responding to inquiries made and account for the PLAINTIFF['s] concerns" in violation of RESPA. *Id.* ¶ 88. Plaintiff alleges that Defendants "claim the PLAINTIFF is making insufficient payments but they have not provided it with information on what the payments should be and the proper background information as above described; and in the alternative, they have failed to prove that they are the parties entitled to the payments." *Id.* ¶ 90. Plaintiff alleges that Plaintiff has "made continual requests for basic information right up through and including just before filing this suit to no avail," and that "[t]his is information that the law requires be given them." *Id.*

Plaintiff alleges that "[n]onetheless without providing this information," Defendants "submitted negative information to credit agencies and bureaus about the PLAINTIFF," which "has prevented Plaintiffs from getting a loan, which is necessary for them to continue their business or operate them at maximum capacity." *Id.* Plaintiff alleges that "they are the assignees of a franchise known as 7 Star Auto Glass, and they are owners of several locations in Fresno, California and elsewhere throughout the United States." *Id.* Plaintiff alleges that "plans to expand elsewhere in the Country" were "put on hold as a result of bad credit created by the above described actions." *Id.* Plaintiff alleges that "[e]ven worse, PLAINTIFF cannot refinance their mortgage for the Subject Property with the poor credit caused by the above." *Id.*

Plaintiff seeks "consequential damages in an amount according to proof at trial, but not less than $100,000" for breach of written contract; "general and special damages in an amount to be determined at trial, but not less than $1,000,000" for negligence; and "general and special damages in an amount according to proof at trial, but not less than $100,000" for negligent misrepresentation. *Id.* ¶¶ 57, 63, 70. Plaintiff seeks "an accounting for all payments made thereto, including any impound account, and for and correction thereof, and reimbursement of the excess amount to PLAINTIFF with interest and attorneys' fees." *Id.* ¶ 74.

Plaintiff seeks disgorgement, restitution, injunctive relief, "actual and statutory damages, attorney's fees and costs, and such other relief as the court determines is due" pursuant to RFDCPA. *Id.* ¶¶ 80–81, 83. Plaintiff "requests that the Court declare the rights of the parties in this matter" and "enforce these rights with the issuance of injunctions or restraining orders as may be necessary to place the parties in their proper position with respect to their interests." *Id.* ¶ 86. Plaintiff alleges that "Plaintiffs have suffered financial and emotionally through this entire ordeal as a direct result of Defendants actions" under RESPA. *Id.* ¶ 88. Plaintiff alleges that Plaintiff "is hindered in its ability to conduct its business and has been hindered in its ability to refinance the Subject Property," and is "losing its right to future income as a result and seek damages of all this." *Id.* ¶ 91. Plaintiff seeks "all damages and equitable relief allowed by law, attorney fees and costs occasioned by the above stated conduct" pursuant to RESPA. *Id.* ¶ 92.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

Stating a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Determining whether a complaint states plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). If both parties advance plausible alternative explanations, then the "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)," because "[t]he standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible.").

## IV.  DISCUSSION

In the seventh cause of action for violation of RESPA, Plaintiff alleges Defendants failed to appropriately respond to Plaintiffs' qualified written request. (ECF No. 26 at 20–21).

Select Portfolio asserts that Plaintiff fails to explain why Select Portfolio had a duty under RESPA to respond to Plaintiff's alleged qualified written request. (ECF No. 28-2 at 13). Select Portfolio asserts that Plaintiff fails to allege facts showing that the qualified written request contained the necessary statement of reasons for the borrower's belief the account was in error. Select Portfolio asserts that Plaintiff fails to allege facts showing how a failure to respond to the qualified written requested caused Plaintiff actual pecuniary damages.

Bayview asserts that Plaintiff fails to identify the specific provisions of RESPA allegedly violated by Bayview. (ECF No. 30-1 at 16). Bayview asserts that Plaintiff's allegations are conclusory. Bayview asserts that Plaintiff fails to allege specific facts in support of the RESPA claim. Bayview asserts that Plaintiff fails to allege facts that identify which of the Defendants violated RESPA. Bayview asserts that Plaintiff fails to allege facts showing that a qualified written request was sent to Bayview.

Bank of America asserts that Plaintiff's allegations regarding RESPA violation are vague and do not provide fair notice of Plaintiff's claim. (ECF No. 31-1 at 18). Bank of

America asserts that Plaintiff fails to allege that a qualified written request was sent to Bank of America. Bank of America contends that even if such a request was sent, Bank of America had no duty to respond under RESPA. Bank of America contends that RESPA imposes the duty to respond only on loan servicers, and that Bank of America's purported role in this action is merely a beneficiary of the loan. Bank of America asserts that any RESPA violation allegedly committed by Bank of America is time barred. Bank of America asserts that Plaintiff admits Bank of America had not serviced the loan for a long period of time, and that the servicing was previously transferred to Select Portfolio and Bayview.

Plaintiff does not reference RESPA in the Response filed in opposition to the Motions to Dismiss. (ECF No. 32).

"If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). A qualified written request is "a written correspondence . . . that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). When a loan servicer receives a qualified written request, it must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of the reason the servicer believes the account is correct, or the reason the requested information is unavailable. *See* § 2605(e)(2). If a loan servicer fails to comply with the provisions of § 2605, a borrower is entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605]." § 2605(f)(1).

9

17cv2408-WQH-RBB

A showing of pecuniary damages is required to state a § 2605 claim. *See Molina v. Wash. Mut. Bank*, No. 09-CV-894, 2010 WL 431439 at *7 (S.D. Cal. Jan. 29, 2010). The requirement to show pecuniary damages limits the cause of action to plaintiffs who can show that the failure to respond or give notice caused actual harm. *See Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 2:09-1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted). A plaintiff is entitled to recover for the loss that relates to the RESPA violation, not for all losses related to foreclosure activity. *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[T]he loss alleged must be related to the RESPA violation itself."); *Torres v. Wells Fargo Home Mortg., Inc.*, No. 10-4761, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011) ("The plaintiff must . . . allege a causal relationship between the alleged damages and the RESPA violation.").

In this case, Plaintiff makes conclusory allegations that Plaintiff "contacted" Defendants Bank of America, Select Portfolio, and Bayview, "to seek immediate correction of her credit reports" and "to seek an immediate accounting of all her mortgage payments." (ECF No. 26 ¶ 42). Plaintiff makes conclusory allegations that Plaintiff's lawyer sent a qualified written request to Select Portfolio on March 14, 2017. Plaintiff alleges that the lawyer "contacted and submitted various letters to the servicer (Select Portfolio Services) for information in the form of a Qualified Written Request [permitted under Section 6 of the Real Estate Settlement Procedures Act ("RESPA")] notice of dispute and demand on or about March 14, 2017." *Id.* ¶ 44. Plaintiff alleges that "[t]hese submittals requested the same kind of information requested by the PLAINTIFF pro se, but were more formal." *Id.*

Plaintiff fails to allege specific facts regarding the content of contacts made by Plaintiff or Plaintiff's counsel, and fails to allege facts showing that such contacts were qualified written requests pursuant to RESPA. The alleged qualified written request is not attached to the Complaint. Plaintiff alleges no facts establishing that Select Portfolio, Bayview, or Bank of America should reasonably have received the request.

Plaintiff fails to allege sufficient facts demonstrating a causal connection between the alleged RESPA violation and the alleged pecuniary damages. Plaintiff alleges that "Plaintiffs have suffered financial and emotionally through this entire ordeal as a direct result of Defendants actions or their predecessors' actions," but does not allege facts in support of this conclusion. Plaintiff alleges that Plaintiff "made continual requests for basic information . . . to no avail," and that "without providing this information," Defendants "submitted negative information to credit agencies and bureaus about the PLAINTIFF." *Id.* ¶ 90. Plaintiff alleges that poor credit "has prevented Plaintiffs from getting a loan," has put business expansion plans on hold, and has hindered the ability to conduct business and refinance the property. *Id.* ¶¶ 90–91.

Even assuming the truth of the allegations that Defendants damaged Plaintiff's credit score, Plaintiff alleges no facts showing a colorable relationship between Defendants' injury-causing conduct and Defendants' RESPA-violating conduct. *See Allen v. United Fin. Mortg. Corp.*, No. 09-2507, 2010 WL 1135787, at *5 (N.D. Cal. March 22, 2010) ("Even if Plaintiff is correct in claiming that Defendants' other conduct resulted in his inability to pay his mortgage, this does not constitute a RESPA claim unless Plaintiff can point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA."). The Court concludes that Plaintiffs have not alleged sufficient facts to support a cause of action for violation of RESPA. *See Twombly*, 550 U.S. at 555; *Allen*, 2010 WL 1135787, at *5 (dismissing RESPA claim where plaintiff alleged "actual damages" including falling behind on mortgage payments, negative credit impact, and emotional distress, but failed to allege any causal relationship between the damages and the RESPA violations). The Motions to Dismiss are granted as to Plaintiff's seventh cause of action for violation of RESPA.

V. **SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS**

Defendants move the Court to dismiss Plaintiff's state law causes of action. (ECF No. 28-2 at 5–12; ECF No. 30-1 at 9–15; ECF No. 31 at 6–18). Plaintiffs assert that this

Court properly has jurisdiction based on federal question jurisdiction over RESPA. (ECF No. 26 at 2).[4]

The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

Having dismissed the only federal claim asserted by Plaintiff against Defendants, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478 & n.12 (9th Cir. 1998) (upholding district court declining to exercise supplemental jurisdiction and requiring no further explanation by district courts acting in accordance with 28 U.S.C. § 1367(c)(3)); *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within

---

[4] The caption and the statement of jurisdiction in the second amended complaint reference TILA; however, the causes of action alleged in the body of the second amended complaint do not include violations of TILA. (ECF No. 26 at 1–2).

The statement of jurisdiction also references diversity jurisdiction. Under the federal diversity statute, district courts are authorized to exercise original jurisdiction in cases in which the amount in controversy exceeds the sum or value of $75,000.00 and the parties are citizens of different states. 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity, meaning every plaintiff must be diverse from every defendant. *Id.*; *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Pursuant to the statute, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c). The allegations of the Complaint show that Plaintiff and Defendant Select Portfolio are both citizens of California. *Id.* at 2–3. Complete diversity does not exist and this Court lacks diversity jurisdiction.

the district court's discretion.") (quoting *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007)).

## VI. CONCLUSION

IT IS HEREBY ORDERED that the motions to dismiss (ECF Nos. 28, 30, 31) are GRANTED. Any motions to file an amended complaint must be filed within thirty (30) days of the date of this order in accordance with Local Rule 7.1.

Dated: November 29, 2018

Hon. William Q. Hayes
United States District Court